# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:20-CV-00472-RSE

**AMY LYNETTE NALLEY**                                                         **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Amy Lynette Nalley's applications for supplemental security income benefits and disability insurance benefits. Nalley presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Nalley (DN 22) and the Commissioner (DN 27) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 16).

## I. Background

At the time Amy Lynette Nalley ("Nalley") applied for disability benefits, she was forty-four years old and lived in Bardstown, Kentucky with her mother and sister. (Tr. 40). Nalley has a high-school education. (Tr. 41). Her past employment includes supervisor at a cleaning company in 2004 and 2005, dishwasher at a nursing home in 2008 and 2009; short order cook at a restaurant

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

from 2010-2016, and several other temporary positions in 2017. (Tr. 41-49). She participated in drug rehabilitation in late 2017 and was incarcerated for several months in 2018 after being convicted of DUI. (Tr. 52-53).

According to Nalley, she mows the lawn, sweeps and mops, keeps her room clean, and does her own laundry. (Tr. 56). Nalley states she doesn't like being around a lot of people because her heart starts pounding and she gets very anxious. (Tr. 62). She estimates that she only sleeps two hours a night due to nightmares and her mind racing. (Tr. 62-63). She reported that she has nightmares about being raped because she was sexually assaulted two times within four months. (Tr. 63). Nalley states that she is in bed for about sixteen hours of the day due to her lack of sleep and to alleviate the pain in her back. (Tr. 61, 63).

Nalley applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI in February of 2018, claiming she became disabled on July 1, 2017, as a result of severe depression, bipolar disorder, anxiety disorder, PTSD, and back problems. (Tr. 221-223, 273). Her applications were denied initially (Tr. 104, 105) and again on reconsideration (Tr. 138, 139). At Nalley's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky, on June 11, 2019. (Tr. 37). Nalley and her attorney attended the hearing in person. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ McDaniel issued an unfavorable decision on August 7, 2019. (Tr. 30).

ALJ McDaniel applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Nalley has not engaged in substantial gainful activity since July 1, 2017, her alleged onset date. (Tr. 22). Second, Nalley has the severe impairments of degenerative disc disease, depression, anxiety, and PTSD. (*Id.*). Third, none of Nalley's

impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 23). Between the third and fourth steps, ALJ McDaniel found Nalley has the residual functional capacity to perform light work with the following limitations:

> She may occasionally stoop, crouch, crawl, kneel, and climb ramps/stairs, but she may never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to vibrations and all exposure to hazards such as unprotected heights or operation of dangerous moving machinery. She is able to understand, remember, and carry out simply instructions, tolerate routine changes, and maintain attention/concentration in 2-hour segments throughout an 8-hour day. She can interact occasionally with coworkers and supervisors but she may not work in tandem and she may not interact with the public for task completion.

(Tr. 25). Fourth, Nalley is unable to perform any past relevant work. (Tr. 28). Fifth and finally, considering Nalley's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 29).

Based on this evaluation, ALJ McDaniel concluded that Nalley has not been under a disability, as defined in the Social Security Act, since July 1, 2017, her alleged onset date, through the date of ALJ McDaniel's decision. (Tr. 34). Nalley administratively appealed the ALJ's decision. (Tr. 218-20). The Appeals Council considered Nalley's disagreement with ALJ McDaniel's decision but declined review because Nalley's arguments did not provide a basis for changing the decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Nalley appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the

claimant bears the overall burden of establishing that they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Nalley challenges three respects of ALJ McDaniel's residual functional capacity ("RFC") determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case

4

record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### A. ALJ McDaniel's Analysis of Nalley's Mental and Physical Capabilities

Nalley argues that ALJ McDaniel erred by relying on the opinions of state agency physicians and psychologists in assessing her RFC because they did not examine her and did not review evidence that post-dated their opinions. As to her mental impairments, Nalley believes ALJ McDaniel should have obtained a more recent medical opinion to account for evidence postdating the state agency psychologists' opinions and to opine whether she could maintain work on an ongoing basis. (DN 22-1, at pp. 14-17). Nalley also takes issue with ALJ McDaniel's determination that "her mental status findings remained largely stable outside of the isolated periods in which the claimant's substance abuse caused acute periods of symptom exacerbation" because it fails to acknowledge the well-documented impact of her mental impairments on her alcohol and drug abuse. (*Id.* at p. 16). And Nalley points out that treatment notes from 2018 and 2019, demonstrating her significant past trauma interacting with her substance abuse, postdated the last medical opinion from a healthcare professional in the record. (*Id.* at p. 17).

As to her physical capabilities, Nalley alleges that ALJ McDaniel was not capable of assessing her abilities based on the professional opinions available in the record. (*Id.* at p. 18). Nalley highlights that the non-examining state agency physicians didn't have access to imaging evidence from May of 2019 that shows a worsening of her spinal condition. (*Id.* at p. 19). Nalley further asserts that a medical opinion was necessary after she ceased opioid use in February of 2019 because her physical pain was altered by this change. (*Id.* at pp. 18-19).

The Commissioner responds that ALJ McDaniel did not err in relying on the opinions of state agency physicians and psychologists in forming her RFC simply because they did not

5

examine Nalley or review certain treatment records postdating their opinions. (DN 27, at p. 5). Critically, the Commissioner emphasizes, ALJ McDaniel reviewed the record as a whole, including evidence postdating the state agency opinions, and found Nalley was more limited than any of the state agency physicians did. (*Id.*). The Commissioner explains that state agency opinions by their very nature are generally dated by several months, or even a year, before the ALJ's decision is rendered. (*Id.* at p. 9). Because ALJ McDaniel considered medical records dated after the state agency opinions, the Commissioner asserts that she based her decision on the record as a whole and her determination was supported by substantial evidence. (*Id.* at pp. 8-9).

The regulations provide that, generally, a claimant is "responsible for providing the evidence [the agency] will use to make a finding about [their] residual functional capacity." 20 C.F.R. § 404.1545(a)(3). But before the agency makes a determination that the claimant is disabled, it is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources." *Id.*

Nalley cites to *Houston v. Astrue*, a 2010 case from this District, for the proposition that an ALJ is not qualified to interpret raw data in medical terms and, hence, an ALJ's RFC finding typically "must be supported by the opinion of at least one physician." (DN 22-1, at p. 15 (quoting *Houston v. Astrue*, No. 5:09CV-002220-J, 2010 WL 3620205, at * (W.D. Ky. July 20, 2010)). *Houston* applied the same principles that the Northern District of Ohio established in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). In the years following *Deskin* and *Houston*, district courts within the Sixth Circuit have narrowed the so-called "*Deskin* rule" to apply only "(1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC error based on an outdated source opinion that did not include

consideration of a critical body of objective evidence." *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019) (quoting *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013)).

Moreover, the Sixth Circuit has since held that "an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d at 409); *see also McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 31 (6th Cir. 2009). Nor is it per se error for an ALJ to solely rely on opinions of non-examining physicians in determining a claimant's RFC. *See* Soc. Sec. Ruling 17-2, 2017 WL 3928306, at *3 (Mar. 27, 2017) (state agency physicians are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."); *Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19 CV 2844, 2020 WL 7769729, at *12 (N.D. Ohio Dec. 30, 2020) (finding that so long as an ALJ's ultimate decision is supported by substantial evidence, an ALJ may rely (in part) on outdated state agency opinions without obtaining updated opinion evidence) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) and *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 29-30 (6th Cir. 2009)).

Neither of the *Deskin* circumstances apply in Nalley's case. ALJ McDaniel relied on the four state agency opinions in the record, the last of which was rendered on July 29, 2018. ALJ McDaniel found these opinions were "persuasive" but then proceeded to add limitations to Nalley's RFC. As to her physical impairments, ALJ McDaniel agreed with the state agency physicians limiting Nalley to light work "with occasional stooping, crawling, and climbing of

ladders, ropes, and scaffolds" and avoidance of "concentrated exposure to vibrations." (Tr. 28). ALJ McDaniel then provided "additional postural limitations as such activities could exacerbate back pain and restrictions from certain hazards as to claimant's mobility may be impacted by pain, making it difficult to avoid or be safe in certain environments." (*Id.*). Similarly, as to Nalley's mental impairments, ALJ McDaniel agreed with the state agency psychologists' finding that Nalley could "perform simple work requiring brief learning periods and sustain attention, concentration, effort and pace for such tasks in 2-hour segments" and "interact as needed with coworkers/supervisors in an occasional public setting and otherwise adapt to routine changes/hazards." (*Id.*). Then ALJ McDaniel "provided social restrictions that are more restrictive, including work away from the public and never in tandem with coworkers, secondary to her mood swings and irritability." (*Id.*).

ALJ McDaniel also clearly considered the evidence that postdated the state agency opinions. In addition to considering evidence the state agency physicians reviewed, ALJ McDaniel cited to MRI results from May of 2019, noting that "[t]here was severe facet hypertrophy at L4-5 and L5-S1, but still no evidence for significant disc herniation and/or nerve root compromise at any level." (Tr. 26 (citing Ex. 17F)). ALJ McDaniel also cited to 2019 treatment records showing a single visit with a chiropractor where she reported stable back pain and an isolated physical therapy note with only mild left leg strength loss. (Tr. 27 (citing Exs. 11F, 17F)). ALJ McDaniel concluded that the longitudinal record did not support muscle spasms or extremity numbness but substantiated that Nalley at times had reduced motion and tenderness to palpation in the spine and limited, if any, persistent neurological deficits. (*Id.*).

In reviewing Nalley's mental impairment evidence, ALJ McDaniel cited to records considered by the state agency psychologists and considered records of Nalley's substance abuse

in 2018 and 2019. Specifically, ALJ McDaniel noted that Nalley had a DUI charge in 2018 that resulted in incarceration, that she was hospitalized for polysubstance dependence in February 2019, and that she required intensive rehabilitation in February and March of 2019. (Tr. 27-28 (citing Exs. 10F, 13F, 14F)). Despite this evidence, the ALJ found that Nalley's drug abuse was not material because even with said abuse, Nalley was not disabled. (Tr. 28). While ALJ McDaniel concluded that Nalley's substance abuse affects her functioning, she noted that it "does not appear to be causing episodes with sufficient frequency to make them reflective of her overall functioning during this time." (Tr. 28).

Nalley takes issue with ALJ McDaniel not considering her reports of being sexually assaulted on two different occasions around 2018 and how this trauma affected her substance abuse. But ALJ McDaniel specifically noted Nalley's reports of "racing thoughts and nightmares about past traumas and assaults." (Tr. 26). This statement reflects Nalley's testimony from her administrative hearing that she has nightmares every night "about . . . getting raped constantly, because I had two happen to me, the past two years or one and a half, something like that . . . I had two within four months' time." (Tr. 63). Although ALJ McDaniel did not explicitly tie Nalley's trauma to her substance abuse, the ALJ clearly considered both Nalley's past trauma and her substance abuse within her RFC.

Nalley's complaint that ALJ McDaniel failed to acknowledge the well-documented impact of her mental impairments on her alcohol and drug abuse is also not persuasive. ALJ McDaniel clearly found that evidence supported Nalley's depression, anxiety, and PTSD and that her mental impairments are "negatively impacted by alcohol and drug abuse." (Tr. 27). After discussing the treatment records from Nalley's hospitalization and rehabilitation, however, ALJ McDaniel ultimately determined that Nalley's substance abuse didn't appear to be causing episodes with

9

sufficient frequency to make them reflective of her overall functioning during this time. (Tr. 28). This well-reasoned conclusion is supported by substantial evidence in the record.

There is no evidence that ALJ McDaniel here interpreted "raw medical data." Most of the evidence postdating the state agency opinions consisted of records from her incarceration at the Bullitt County Detention Center (Ex. 10F); records from Dr. Paula Johnson from February 2018-January 2019 and March 2019 to May 2019 (Exs. 11F; 17F); hospitalization records from February 2019 (Exs. 12F; 14F); records from Schwartz Rehabilitation Center from February to March 2019 (Exs. 13F; 15F); and records from Communicare from June 2018 to April 2019 (Ex. 16F). These records are largely not the type of "raw medical data" that ALJs are prohibited from analyzing. While Nalley's 2019 MRI included medical data, ALJ McDaniel simply stated the findings outlined in Nalley's 2019 MRI Imaging Services Report and noted that "[t]here was still no evidence for significant disc herniation and/or nerve root compromise at any level (17F)." (Tr. 26). In so finding, ALJ McDaniel did not erroneously "play doctor" or inappropriately analyze Nalley's MRI results.

For all of these reasons, the Court finds ALJ McDaniel's evaluation of Nalley's mental and physical impairments in her RFC determination is supported by substantial evidence in the record and comports with the applicable regulations and caselaw. She was not required to seek additional opinion evidence.

### B. ALJ McDaniel's Analysis of Nalley's Subjective Complaints

Nalley lastly claims that ALJ McDaniel's analysis of her subjective complaints is not supported by substantial evidence. She alleges that ALJ McDaniel discounted her subjective complaints based solely on the medical evidence and did nothing to address the concern that Plaintiff's opiate abuse resulting from her mental impairment would alter her physical pain. (DN

22-1, at p. 20). The Commissioner responds that the ALJ appropriately considered the longitudinal record, including objective medical evidence, exam findings, level of treatment, Nalley's testimony, and the state agency opinions in finding that Nalley's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent "with the medical evidence and other evidence in the record." (DN 27, at p. 15).

The ALJ's assessment of a claimant's subjective symptoms, formerly referred to as the "credibility" determination, focuses on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). A claimant's statement that she is experiencing pain or other symptoms, taken alone, will not establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. The ALJ considers objective medical evidence, as well as other factors, such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3); SSR 16-3P, at *7-8.

In determining whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in *Duncan*, 801 F.2d at 853. First the ALJ must examine whether there is objective medical evidence of an underlying medical condition. *Duncan*, 801 F.2d at 853. Second, the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

established medical opinion is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id*. Here, after highlighting Nalley's testimony from her hearing regarding her mental and physical impairments, ALJ McDaniel found that Nalley's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [Nalley's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 26).

ALJ McDaniel then proceeded to discuss the record evidence for both Nalley's physical and mental impairments. She noted that the medical evidence supports that Nalley sought treatment for her complaints of degenerative disc disease and, as a result on this impairment, limited Nalley to light work with enumerated restrictions. (*Id.*). ALJ McDaniel then indicated that objective studies, including several MRIs, did not support additional restrictions. (*Id.*). As to the nature and severity of Nalley's mental impairments, ALJ McDaniel found that evidence supported Nalley's depression, anxiety, and PTSD as she presented with depressed and anxious affect at times but that "the longitudinal record supports that no additional limitations," beyond those assessed in the RFC, are needed. (Tr. 27). She also addressed credibility factors throughout her RFC, including the level of treatment Nalley received for individual impairments. For instance, as to Nalley's degenerative disc disease and neurological issues, ALJ McDaniel noted that she reported improvement with "routine treatment" and that she "attended only one chiropractor visit stating she could not keep up with the schedule they recommended." (Tr. 26). ALJ McDaniel also considered Nalley's medications, noting that she didn't report any side effects from her medication, that she reported benefits from using Zoloft, and that prior to her February 2019 hospitalization she had stopped taking her medication for approximately thirty days. (Tr. 27).

12

Because ALJ McDaniel discussed the subjective and objective medical evidence at length, weighed Nalley's testimony against the record evidence, and considered Nalley's subjective complaints using the regulatory factors, the Court finds that ALJ McDaniel's evaluation of Nalley's subjective complaints is supported by substantial evidence and complies with the applicable regulations.

### IV. ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

November 23, 2021

Copies: Counsel of Record